## A. Milhim, Appellee, v. German Fire Insurance Company, Appellant.

INSURANCE, § 663*—*when evidence of incendiary origin of fire and conspiracy to defraud insurer sufficient to defeat recovery.* In an action on a fire insurance policy to recover for the loss of a stock of goods by fire, *held* that a judgment for plaintiff could not be sustained and it was reversed on the ground that the preponderance of the evidence showed that the fire was of incendiary origin, and that a conspiracy existed between plaintiff and others to defraud the insurance company by misrepresenting the value of the goods before the issuance of the policy and in fraudulently misrepresenting the value of the goods destroyed.

Appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the April term, 1913. Reversed with finding of fact. Opinion filed May 15, 1914. Rehearing denied June 25, 1914.

CHARLES B. OBERMEYER, SPENCER EWING and WIGHT & ALEXANDER, for appellant.

DEMANGE, GILLESPIE & DEMANGE, for appellee.

PER CURIAM. This is an action on an insurance policy brought by plaintiff against defendant Company for an alleged loss by fire, whereby goods covered by this policy were damaged or destroyed. The trial below resulted in a judgment against the defendant Company for $1,643.75 on a policy for $1,500; the defendant prosecutes this appeal.

Plaintiff herein, a Syrian twenty-five years of age, had been in this country twelve or fifteen years, and had worked at various occupations. He married a girl by the name of Barka; his wife had two brothers in this country, one, David Barka, resided at or near Indianapolis, and the other, Samuel Barka, resided in Iowa. Plaintiff married his wife against the wishes and desires of her family, running away with her to the city of Detroit, where they remained several days; they

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

then returned to Cincinnati, where they were married.
Plaintiff was located for a time in Cincinnati, but dur-
ing a greater portion of the time that he has been in
this country he traveled as a peddler of imported Sy-
rian goods.   On the nineteenth of August, 1910, he
opened a store in the city of Bloomington, from which
he claims to have supplied one hundred or more ped-
dlers of his own country with goods, wares and mer-
chandise which they peddled over the country.

Plaintiff did business with numerous Syrian mer-
chants, one whose firm was conducted under the name
of Brown and Company, another under the name of
Solomon Brothers.   Solomon Brothers had stores lo-
cated in Chicago, Cincinnati and New York.   On the
fourth day of October, 1910, less than two months after
the store was started at Bloomington, the fire occurred.
At the time of the fire the plaintiff held insurance pol-
icies amounting to $13,000 upon a stock of goods.   After
an investigation of the loss and the conditions surround-
ing the fire, the defendant Insurance Company refused
to pay its policy, insisting that plaintiff, together with
the Solomon Brothers, who operated the Chicago store,
together with a Syrian at Springfield, Illinois, by the
name of A. W. Shaheen, conspired to open the store at
the city of Bloomington, secure policies of insurance
thereon, set fire to the store and recover upon the
policies.

Defendant insists that this condition is shown to
exist by this record; that the plaintiff did not have the
amount of goods in the store at Bloomington that he
claims; that he was not the sole and unconditional
owner of the said property, and that the place was set
on fire either by plaintiff or by and through his con-
nivance and direction in accordance with the conspiracy
claimed to have existed.

In support of the contention that the store was set
on fire by plaintiff, or with his knowledge and consent
or under his direction, defendant produced a letter

written by plaintiff in the Syrian language to his brother-in-law, Samuel Barka, at some town in the State of Iowa.

While plaintiff was located in Cincinnati he became involved in trouble with his wife's brother, David Barka and one Haboush, who then resided in Cincinnati but afterwards were located in Indianapolis, Indiana. After receiving this letter written by plaintiff, Samuel Barka went to Indianapolis; there he visited his brother David and showed him the letter received from the plaintiff. David Barka refused to return the letter to his brother Samuel, and it is contended by defendant that this letter contained a statement that plaintiff had recently opened a store for Solomon Brothers at Bloomington and that they intended soon to burn it; while plaintiff, on the other hand, contends that that part of the letter which is as follows:

"I give you the news I have opened a store for Solomon Brothers, and pretty soon they want to burn it" was not written in the letter by him but that that part of the letter is a forgery and was placed there by David Barka or Haboush for the purpose of revenge and injuring plaintiff, and that the motive for this forgery and revenge was induced from the fact that at one time the plaintiff drove the said David Barka from his place of business in Cincinnati, and that Haboush, the other party to the forgery, desired that his son, Louis Haboush, should marry the sister of David Barka, who was now the wife of the plaintiff, contending that Haboush desired to get rid of the plaintiff so that his son could marry this woman and that plaintiff prevented this marriage by running away with the woman and marrying her.

After Samuel Barka had given this letter to his brother David he asked David to return it and insists that David told him he had burned the letter, at least, David did not return the letter, and Samuel and David had a fight over David's failure to return it. David in

the meantime had taken the letter to a lawyer in Indianapolis named Ruick and told him the contents thereof; this lawyer then wrote to the State's Attorney at Bloomington, Illinois, to ascertain whether there had been a fire at that place in a store carried on by plaintiff, and being informed that there had been such a fire he then took the matter up with the insurance companies, furnishing them the letter. David Barka translated the letter for the Indianapolis lawyer and made an affidavit concerning it.

Plaintiff testifies that David Barka afterwards wrote him concerning this letter and concerning the forged part of it, admitting that he had committed a wrong against plaintiff, that he together with Haboush had committed the forgery with the intention of getting plaintiff into trouble and that he, David Barka, was drunk at the time he was in the office of the lawyer in Indianapolis, but notwithstanding the character and importance of this letter alleged by plaintiff to have been written by David Barka, plaintiff lost the letter and was unable to produce it at the trial, but produced David Barka at the trial and he testified to having written the letter to plaintiff and to its contents as contended by plaintiff, and testifies that after he had received this letter from Samuel, his brother, he together with Haboush went to various stores in Indianapolis for the purpose of comparing this ink and of obtaining a similar ink with which they could write in the letter the clause that it was contended was a forgery; that he and Haboush practiced upon this writing after they obtained ink that was similar and could not be distinguished from the original and wrote in the space equal to that which they contend was vacant in the letter the words, "I have a store for Solomon Brothers, and a short time they are going to burn it," or that Anton Haboush wrote the eleven words contained in the letter and he said to him, "You fix it up," and Louis Haboush said, "I will do it."

The evidence of numerous friends and relatives of Milhim, the plaintiff, is that in their opinion these words in this letter is a forgery, but the preponderance of the evidence by disinterested parties who did not know plaintiff is that the lines alleged to be a forgery are written in the same hand and with the same ink as the balance of the letter.

The greater part of the goods contained in this store at Bloomington were furnished by the Solomon Brothers, who claimed to have stores in Chicago and New York. There are seven Solomon brothers, who operated under various names, in one place under the name of Brown and Company and in another under the name of Farris. One of the Solomons was known in Bloomington and Springfield as Charles Farris, but his real name was Charles Solomon. This Charles Solomon denies having been at these places, and especially at Bloomington a day or two before the fire, but the evidence is conclusive that he was at these places and that he is the same person that was known in Springfield and Bloomington as Charles Farris.

This firm of Solomon Brothers, or J. Brown and Company, had been adjudged bankrupts but a short time before they claim to have furnished these goods to the plaintiff, and while it is claimed that plaintiff is in debt to them on account of purchases made by him for the Bloomington store, yet in the schedule of creditors of the firm of Solomon Brothers or Brown and Company in the bankruptcy proceedings appears the name of the plaintiff. This schedule discloses that the bankrupt firm was indebted in the sum of $411.28 to plaintiff who, as well as going by the name of A. Milhim, was also known as Abraham Corey. This name also appears in the bankrupt schedule as a creditor of the firm to the amount of $117.35; plaintiff was also known by the name of Abraham El. Khourey. This name also appears upon this schedule as a creditor of the bankrupt firm to the amount of $205; plaintiff sometimes

adopted the name Abraham El. Corey, and this name also appears in the schedule of the bankrupt as a creditor to the amount of $177.34. These accounts are all listed as desperate in the bankruptcy proceedings.

Charles Solomon, under the name of Farris, was a frequent attendant and helper at the store of Shaheen and Company in Springfield. One Abram Farrah, a Syrian, testifies that he was at work for Shaheen and Company while Charles Solomon, *alias* Farris, was here and that afterwards the Shaheen store was burned in Springfield; that during the time that he was employed in the store Charles Solomon, *alias* Farris, together with other persons who came to the store, were engaged in changing the books or making a set of books for the Shaheen store at Springfield; that after having completed one set, Charles Solomon remarked that they were not sufficient and that they could not be relied on; that he put them in the stove and burned them, and that afterwards another set was prepared which was used as a basis of recovery for the loss at the Shaheen store. Farrah further testified that he heard a conversation at the Shaheen store between his uncle and Charles Solomon in which his uncle said, "I am surprised, Abram Milhim had a store, had about five hundred dollars worth of goods in the store and he had a fire and is going to get twelve thousand from the insurance company, see how smart and clever he is," and that to this remark Charles Solomon replied, "Not because he was smart and clever that he is going to get that, because we were smart and clever, we did that, we give him the lesson, and showed him how he is going to get twelve thousand dollars for five hundred dollars worth of goods, we were to teach you the same, and you would not listen." This witness then testifies that he was called into the presence of his uncle and Charles Solomon and they told him if anything happened to the store they wanted him to keep quiet, and when he threatened to tell the truth about what he had seen and

heard, Charles Solomon then told him to go away so that he could not and would not be called upon in case of any proceedings had concerning the change of the books or the conversation he heard.

While plaintiff contends that he knew nothing of the loss or the cause of the fire in Bloomington and that he had from $17,000 to $19,000 worth of goods in this store and that they were virtually all destroyed by fire, the evidence is conclusive that the fire in this store did not cover a space over ten by twelve feet and was in the rear of the store that had an area of nine hundred and sixty square feet; that the goods that were destroyed were not of an expensive character; the total value of the goods in the seven-eighths of the store that was not burned amounted to $2,100; and that it was utterly impossible from the extent of the fire that occurred in this room on that night that any such an amount of goods as claimed by plaintiff could have been destroyed. The goods within the space burned over were not all burned, some were kicked out on the sidewalk by the firemen or trampled upon on the floor and a few fell out of the rear door where the glass had been broken.

On the night of the fire plaintiff was in the city of Chicago, having gone there the day preceding, and received a telegram on the morning after the fire to return home. While Milhim was in Chicago he visited the Solomon Brothers. The evidence further discloses that two persons, a Miss Marx and a Miss Davidson, were employed at various times working upon the books in the store of Milhim at Bloomington and made entries in these books.

Miss Marx made the index to the ledger kept at that store, although Milhim denies that she was ever there or ever worked upon his books; he also denies that Miss Davidson ever worked upon the books, although the evidence is conclusive that she did. The books produced by plaintiff for the purpose of establishing the amount of his loss in this store, these witnesses testify, are not

the books upon which they worked or in which they made entries.

The evidence in this record is very voluminous, and it is very conflicting; but after a careful examination of the entire record and the character of the evidence, we can only arrive at the conclusion that the manifest weight and clear prepondernnce of the evidence in this record discloses and proves to our satisfaction that the fire was of incendiary origin; that a conspiracy existed between Solomon Brothers and plaintiff for the purpose of defrauding the defendant Insurance Company, and that the books produced upon the trial for the purpose of proving the amount of goods contained in this store at the time of the fire are fraudulent and were made as a result of the conspiracy between Solomon Brothers and Milhim; that Solomon Brothers are interested in this store; that Milhim is not the sole and unconditional owner of this property, and that the plaintiff and Solomon Brothers are guilty of an attempt to defraud the Insurance Company. For these reasons this judgment cannot be permitted to stand, and it will be reversed with a finding of fact. The clerk will enter in the judgment rendered in this court that plaintiff with others was and is guilty of an attempt to unlawfully and fraudulently carry out a conspiracy entered into by them to defraud the defendant Insurance Company by misrepresenting the value of the goods insured before the issuance of the policy and that he fraudulently misrepresented the value of the goods destroyed.

The judgment is reversed.

*Reversed with finding of fact.*